IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:09-cv-00022-H

PAULA PARRISH,
    Plaintiff,

v.

JOHNSTON COMMUNITY COLLEGE, a
constituent institution of the North Carolina Community
College System, DR. DONALD L. REICHARD, in his
Individual capacity, DONALD H. JOHNSON, in his
Individual capacity, and, GEORGE HAROLD JONES,
in his Individual capacity
    Defendants.

FIRST AMENDED
COMPLAINT AND
JURY TRIAL DEMAND

_____

Plaintiff, Paula Parrish, by and through her undersigned counsel, complains of the Defendants, Johnston Community College, Dr. Donald L. Reichard, in his individual capacity, Donald H. Johnson, in his individual capacity, and George Harold Jones, in his individual capacity, and alleges the following:

I. NATURE OF THE ACTION

1. This is a civil action seeking back pay, equitable relief, and damages pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e, and the amendments thereto, and pursuant to 42 U.S.C. §1981a, arising from defendant's unlawful discrimination against plaintiff on account of her sex. Plaintiff also seeks damages for deprivation of rights under the Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. §1983 against Defendants Reichard and Johnson in their individual capacities, and against

1

Defendant Jones in his individual capacity for battery, assault, and, the intentional infliction of emotional distress, under North Carolina common law.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 42 U.S.C. §2000e as well as 28 U.S.C. §1331 in that such claims arise under the laws of the United States. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's claims for battery, assault, and the intentional infliction of emotional distress.

3. Venue is proper in this judicial district pursuant to 42 U.S.C.§2000e-5(f) and 28 U.S.C. §1391 in that at all times relevant, Plaintiff resided in this district, currently resides in this district, and the violations of law complained of herein all occurred in this judicial district.

4. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. On October 21, 2008 a Notice of Right to Sue was mailed to the Plaintiff, via U.S. mail. Plaintiff has complied with all administrative prerequisites in order to bring this action.

## III. PARTIES

5. Plaintiff Paula Parrish is a female citizen of the United States and of the State of North Carolina. At all times relevant to this action, plaintiff was a resident of Johnston County, North Carolina, and was employed by the Defendant Johnston Community College as the Director of Computer Training on its main campus in Smithfield in Johnston County, North Carolina.

6. Defendant Johnston Community College (hereinafter "JCC") is and was at all times relevant to this action, an educational institution and constituent of the North Carolina Community College System, operating pursuant to the provisions of Chapter 115D of the North Carolina General Statutes and an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq.

7. Defendant, Dr. Donald L. Reichard (hereinafter "Reichard"), is, upon information and belief, a citizen and resident of Johnston County, North Carolina, and is the President of Johnston Community College and the Plaintiff's supervisor.

8. Defendant Donald H. Johnson (hereinafter "Johnson"), is, upon information and belief, a citizen and resident of Johnston County, North Carolina, and held various administrative positions at Johnston Community College, including administrative positions where he acted as Plaintiff's supervisor.

9. Defendant George Harold Jones (hereinafter "Jones") is, upon information and belief, a citizen and resident of Johnston County, North Carolina and until December 2007 was a maintenance supervisor at Johnston Community College.

## IV. FACTUAL BACKGROUND

10. Plaintiff Paula Parrish began working for Defendant Johnston Community College in January 2000, as Director of Computer Applications and Distance Education. Organizationally, Plaintiff's position is located within the College's Division of Continuing Education. Plaintiff's job title eventually became Director of Computer Training. She has remained within the College's Division of Continuing Education.

3

11. Plaintiff is qualified for the positions she has held and at all times during her employment, Plaintiff performed all of the duties assigned to her in a professionally competent manner.

12. At all times relevant to this complaint, Defendant Johnson was employed with or was an agent of Defendant JCC. He was employed in the College's Division of Continuing Education until approximately March 2008. Prior to some time in 2004, Defendant Johnson was the Director of the Small Business Center and had an office in the same building as Plaintiff's office. During 2004, Johnson became the Department Chair of Fire and Emergency Services.

13. Almost from the start of her employment, Defendant Johnson created a work environment and atmosphere saturated with sexual suggestion, innuendo and proposition. For instance, in a car ride returning from a business meeting, Johnson asked Plaintiff questions about what sexual positions she liked; he often told jokes of a sexual nature in the office setting that included Plaintiff and other women; he sent email messages with sexual content to all of the women in the Continuing Education Division. The emails had subject lines, such as, "The 'F' word (@#$%)," "Sex Fairy," "her job," and "A prayer for the girls!" Johnson discussed what he did with his wife during sexual encounters, including graphic discussions of oral sex acts. To Plaintiff, Johnson would comment that he "liked the view," when walking behind her.

14. Plaintiff expressed her discomfort with Johnson's sexual suggestions and other sexual talk on several occasions. In 2000, shortly after she had begun working with Johnson, she told him directly that she was uncomfortable with the sexual content of his conversations. In 2001, Plaintiff went to Talbert Myers, her supervisor and Johnson's, and complained of
4

Johnson's behavior. Myers questioned other women in the Continuing Education Division. Among his conclusions was that four of the five women interviewed agreed that Johnson's jokes and comments sometimes got to the point of being offensive. Myers labelled Johnson's conduct as "border line harassment" and did not take any disciplinary action against Johnson. In 2004, Plaintiff again complained to her immediate supervisor. Plaintiff's supervisor again encouraged Plaintiff and a coworker to confront Johnson. Plaintiff's supervisor took no further action. Plaintiff and her coworker did, in fact, confront Johnson and asked him to cease the offensive conduct.

15. In 2005, Plaintiff again complained about Johnson's behavior. This time the Director of Human Resources conducted an investigation and reported her findings to Defendant Reichard, President of the College. After witness statements were taken and Plaintiff's allegations of a hostile working environment were substantiated, Plaintiff was called to a meeting with Defendant Reichard. At that meeting she was told that the investigation had uncovered a violation of the College's sexual harassment policy. Plaintiff was further told that she was to "destroy all of the evidence" that she had gathered in support of her complaint and "never speak about this again." Upon information and belief, a coworker who had also complained of Johnson's behavior was told not to speak about the sexual harassment complaint again, to destroy her documents, and, that failure to follow this directive could result in job loss. Plaintiff was aware of the aforementioned communication to her coworker and believed that, in fact, her coworker had received the same message that Plaintiff had: that speaking of the sexual harassment complaint would result in negative consequences, including job loss.

5

16. Following her 2005 complaint, Plaintiff had less occasion to be effected by Johnson's sexual talk. Once he was given a new position as Department Chair of the Fire and Emergency Services, Johnson's office was located in a different building than Plaintiff's office. In addition, Plaintiff and other coworkers took deliberate and conspicuous actions to avoid any contact with Johnson. For instance, to avoid Johnson Plaintiff would miss certain meetings where Johnson was in attendance or appointed a facilitator; she and other women in the Continuing Education Division would alert one another when Johnson was approaching their building.

17. Despite Plaintiff's efforts to avoid Johnson, she still had occasion to be in his presence when his actions centered on talk of a sexual nature. For instance, in December 2007, Johnson came to the building where Plaintiff's office is located and shared a story about two strippers moving next door to him, adding that he thought his wife was more excited than he was. Several women, including Plaintiff, were Johnson's intended audience.

18. Following her 2005 complaint, Plaintiff also noticed that Johnson was more severe when he interacted with her and seemed to be looking for information that he could use to undermine her credibility with supervisors and coworkers or to create an atmosphere of intimidation. For instance, Johnson would make a point of mentioning that he had played golf with Defendant Reichard, including playing golf during working hours. Sitting at a coworker's desk, Johnson would check his email and also open email that was sent from the Plaintiff to her coworker. He would ask others what time Plaintiff was expected in to work, although he had no need to interact with Plaintiff and, therefore, no need to know what time Plaintiff would arrive at her office.

19. Not long after being directed by Defendant Reichard that Plaintiff was to "never speak about this again," in reference to the sexual harassment complaint against Johnson, Plaintiff began to receive unwanted attention from Defendant George Harold Jones. Initially, Jones would approach Plaintiff and comment that Plaintiff was a "pretty lady." One day, Jones waited for Plaintiff at her car after work and offered her small bottles of liquor. Then he started coming frequently into Plaintiff's office, bringing candy and gum. At times, Jones would approach Plaintiff while she was on the telephone and hand her a stick of gum. Plaintiff would also find sticks of gum or individually wrapped pieces of candy on her desk in the morning when she arrived at her office.

20. Plaintiff asked Jones to stop bringing her candy and gum. Jones replied, "but why baby, you know I love you." Despite Plaintiff's protestations, Jones continued to leave food items on her desk.

21. On December 4, 2007, Plaintiff came into work and found her door unlocked and slightly ajar. As this had happened before, Plaintiff decided to set up a webcam in her office.

22. When Plaintiff checked the webcam on December 10, 2007, she discovered photographs of Jones exposing himself, masturbating and performing other lewd acts in her desk chair. The photographs also showed Jones placing an unwrapped stick of gum against his penis and then re-wrapping the gum and placing it on Plaintiff's desk.

23. The following day, December 11, 2007, Jones was given the opportunity to resign his position at Johnston Community College and he did so.

24. Plaintiff specifically told college administrators that she was afraid that Jones would continue to stalk her and that she needed protection. Plaintiff was told that the college did not have a remedy for protecting her against violence at her workplace.

25. Plaintiff, suffering from severe mental and emotional distress, remained out of work until January 2, 2008. When she returned to her office, she realized that no one had replaced the chair in which Jones had performed his lewd acts nor had maintenance cleaned the office.

26. Upon her return to work, Plaintiff wrote several statements to the college administration expressing her beliefs that the Jones' incident was facilitated by the college administration's poor responses to complaints of sexual harassment and its tolerance for an environment that degrades women by talk of sex. Plaintiff's supervisor instructed her to alter her statements before he would accept them.

27. After resigning his position, Jones continued to come to the Johnston Community College campus where Plaintiff worked. Plaintiff again asked that the college take action to keep Jones away from campus and was again told that the college could do nothing to prevent Jones' presence on campus, except to request that he voluntarily avoid the campus and that, if he came to campus, to voluntarily alert the human resource administrator of his presence.

28. During the time that Johnson was sexually harassing the Plaintiff, she experienced anxiety, nervousness and depression. After her 2005 complaint, Plaintiff was still tense at work whenever she had to be in Johnson's presence. After the 2007 incident with Jones, Plaintiff experienced severe mental and emotional distress, to include anxiety, panic, insomnia, among other symptoms. The 2007 incident brought back images and feelings associated with Johnson's harassment of Plaintiff. When Plaintiff's supervisors informed her that

there was nothing they would do to protect her from Jones at her work place, after he had resigned his position, Plaintiff again experienced severe emotional distress, most recently in the Fall 2008, after learning that Jones had made several unfettered excursions onto the college campus. Plaintiff's physician advised that she remain away from the college campus until her feeling of safety could be returned. Plaintiff's employer refused Plaintiff's request for an accommodation based upon her physician's advice and ordered her to return to the main campus.

## IV.     CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF AGAINST DEFENDDANT JOHNSTON COMMUNITY COLLEGE**
**SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. §2000e et. seq.**

29. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 28 and incorporates the same herein as though fully set forth.

30. By its actions, Johnston Community College has subjected Plaintiff to offensive sexual conduct which was unwanted, severe and pervasive, and, was directed at her because of her sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et. seq.

31. JCC knew or should have known of Defendant Jones' conduct and failed to protect Plaintiff from Jones' sexual harassment. JCC and its agents created a hostile work environment, in which unwelcome conduct of a sexual nature was severe, pervasive, and, sufficiently patterned, and, directed at Plaintiff because of her sex, female.

32. JCC knew or should have known that Defendant Jones would continue to stalk Plaintiff at her work place, that his actions were directed at her because of her sex, female, and JCC failed to act to

9

protect Plaintiff from Jones' continued stalking, thereby creating a hostile work environment, in which unwelcome conduct of a sexual nature was severe, pervasive, and, sufficiently patterned, and, directed at Plaintiff because of her sex, female.

33. JCC knew or should have known of Defendant Johnson's sexually harassing conduct and failed to protect Plaintiff from Johnson's conduct, thereby creating a hostile work environment in which unwelcome conduct of a sexual nature was severe, pervasive, and sufficiently patterned, and, directed at Plaintiff because of her sex, female.

34. By its actions, JCC discriminated against Plaintiff with respect to her employment on account of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, and JCC has therefore committed unlawful employment practices, entitling plaintiff to relief.

35. Proximately, directly, and solely as a result of JCC's discrimination against Plaintiff on account of her sex, plaintiff has suffered and continues to suffer damages consisting of lost employment benefits, great mental distress, and other damages. She has incurred and will continue to incur medical expenses for medical treatment and other incidental expenses. Plaintiff is, therefore, entitled to recover compensatory damages, back pay, and other equitable relief as provided by law.

**SECOND CLAIM FOR RELIEF**
VIOLATIONS OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION PURSUANT TO 42 U.S.C. §1983 AGAINST DEFENDANT REICHARD, IN HIS INDIVIDUAL CAPACITY, AND AGAINST DEFENDANT JOHNSON IN HIS INDIVIDUAL CAPACITY

36. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 35 and incorporates the same herein as though fully set forth herein.

37. Acting under color of state law, defendants treated plaintiff differently than other similarly-situated employees because of her sex, female and their discriminatory treatment of the Plaintiff was not related to any important governmental objective.

38. Johnson created a hostile and abusive atmosphere in the work place that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. Johnson was deliberately indifferent to Plaintiff's requests that he refrain from communication that created a hostile working environment based on sex. Furthermore, after Plaintiff complained in 2005, Johnson continued to treat Plaintiff differently because of her sex, in that he refused to engage in a professional relationship and, instead, altered the relationship to one of intimidation based on Plaintiff's sex.

39. Reichard had actual or constructive knowledge that Johnson and Jones engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff. Reichard responded with deliberate indifference and/or tacit authorization of Johnson's and Jones' conduct.

40. As an affirmative consequence of Reichard's deliberate indifference and/or tacit authorization of Johnson's and Jones' conduct, Plaintiff has experienced a deprivation of her rights under federal law to receive equal treatment. As an affirmative consequence of Johnson's deliberate indifference to Plaintiff's repeated requests that he refrain from

11

communication that created a hostile working environment, Plaintiff has experienced a deprivation of her rights under federal law to receive equal treatment.

41. Defendants' disparate treatment of plaintiff constitutes a violation of the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution.

42. Said misconduct by these defendants, proximately caused plaintiff substantial damages including but not limited to front pay loss, and back benefit loss, loss of earning capacity, emotional distress, loss of career and reputation, and humiliation and embarrassment. The plaintiff will continue to suffer these damages in the future.

43. Said misconduct by the individual defendants was willful, malicious and/or intentional and/or undertaken in reckless disregard of plaintiff's civil rights thereby entitling her to an award of punitive damages against these defendants in their individual capacities.

44. Defendants failed to act reasonably to protect Plaintiff's clearly established legal rights.

**THIRD CLAIM AGAINST DEFENDANT JONES, in his individual capacity, BATTERY**

45. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 44 and incorporates the same herein as though fully set forth.

46. Defendant Jones caused Plaintiff to experience harmful or offensive bodily contact which was intentional and not privileged.

47. Defendant's conduct was willful, wanton, and malicious, and, evinced a reckless disregard for Plaintiff's rights. Plaintiff is thereby entitled to compensatory and punitive damages.

**FOURTH CLAIM AGAINST DEFENDANT JONES, in his individual capacity,**

12

## ASSAULT

48. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 47 and incorporates the same herein as though fully set forth.

49. Defendant Jones expressed an intention to engage in unconsented harmful or offensive bodily contact with Plaintiff and Plaintiff had a reasonable apprehension that Defendant had the apparent ability to engage in such contact and imminently threatened her with offensive or harmful bodily contact.

50. Defendant's conduct was willful, wanton, and malicious, and, evinced a reckless disregard for Plaintiff's rights. Plaintiff is thereby entitled to compensatory and punitive damages.

### FIFTH CLAIM AGAINST DEFENDANT JONES, in his individual capacity, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

51. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 50 and incorporates the same herein as though fully set forth.

52. Plaintiff was subjected to extreme and outrageous conduct by Jones when he engaged in inappropriate sexual conduct toward the Plaintiff, including, but not limited to, those acts previously described in this Complaint.

53. The extreme and outrageous conduct of Jones was intended to cause, and did cause, Plaintiff to suffer severe emotional distress. Plaintiff has sought medical treatment for the physical and emotional consequences of Jones' conduct and has been diagnosed by a licensed professional as having suffered severe emotional distress.

54. As a direct and proximate result of the intentional infliction of emotional distress Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental

and emotional distress; she has incurred and will continue to incur medical expenses for treatment by health professionals and for other incidental expenses. Plaintiff has lost wages and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proved at trial.

55. Defendant's conduct was willful, wanton, and malicious, and, evinced a reckless disregard for Plaintiff's rights. Plaintiff is thereby entitled to punitive damages.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays the court:

1. AS TO THE FIRST CLAIM FOR RELIEF:

a. For judgment against the Defendant in such sums as a jury may award as compensatory and punitive damages, pursuant to 42 U.S.C. §1981a, for the violation of Plaintiff's civil right to be free from discrimination in employment;

b. For a judgment declaring the employment practices of Defendant alleged herein to be unlawful;

c. For an order requiring the Defendant to make whole the Plaintiff by reinstating her to the position of employment she would have enjoyed had Defendant not engaged in its unlawful practices, by providing Plaintiff appropriate back pay, front pay, and reimbursement for lost benefits in an amount to be shown at trial, and by granting Plaintiff other appropriate affirmative relief;

d. For recovery of Plaintiff's costs herein, including a reasonable attorney's fee pursuant to 42 U.S.C.§1988.

14

2. AS TO THE SECOND CLAIM FOR RELIEF:

a. The Court declare that defendants' actions are unlawful and unconstitutional, violating the Fourteenth Amendment of the U.S. Constitution;

b. The Court permanently enjoin defendants, their agents, successors, and employees from engaging in or continuing any and all practices found by this Court to be unlawful or unconstitutional;

c. Plaintiff recover lost employee benefits she would have received but for defendants' unlawful acts;

d. Plaintiff recover of defendants compensatory damages in amounts to be proved at trial;

e. Plaintiff recover of defendants in their individual capacity, punitive damages;

f. Plaintiff recover the costs of this action, including a reasonable attorneys' fee, as by law allowed.

3. AS TO THE THIRD CLAIM FOR RELIEF:

a. That Plaintiff be awarded general and compensatory damages against George Harold Jones, in his individual capacity, in amounts to be proved at trial, including prejudgment interest as by law allowed, and

b. That Plaintiff be awarded punitive damages against George Harold Jones in his individual capacity with interest thereon as by law provided; and

c. That the costs of this action be taxed against Defendant George Harold Jones, in his individual capacity, as by law provided and for such other legal and equitable relief as this Court finds just and proper.

4. AS TO THE FOURTH CLAIM FOR RELIEF:

a. That Plaintiff be awarded general and compensatory damages against George Harold Jones, in his individual capacity, in amounts to be proved at trial, including prejudgment interest as by law allowed, and

b. That Plaintiff be awarded punitive damages against George Harold Jones, in his individual capacity, with interest thereon as by law provided; and

c. That the costs of this action be taxed against Defendant against George Harold Jones, in his individual capacity, as by law provided and for such other legal and equitable relief as this Court finds just and proper.

5. AS TO THE FIFTH CLAIM FOR RELIEF:

a. That Plaintiff be awarded general and compensatory damages against George Harold Jones, in his individual capacity, in amounts to be proved at trial, including prejudgment interest as by law allowed, and

b. That Plaintiff be awarded punitive damages against George Harold Jones, in his individual capacity, with interest thereon as by law provided; and

c. That the costs of this action be taxed against Defendant against George Harold Jones, in his individual capacity, as by law provided and for such other legal and equitable relief as this Court finds just and proper.

6. For a trial by jury as to all issues so triable;

7. For such other relief as to the court may seem just and proper.

Respectfully submitted, this the 19th day of January 2009.

                        THE LEONLAW FIRM, P.C.

                        /s/ Mary-Ann Leon
                        MARY-ANN LEON.
                        N.C. State Bar No. 26476
                        Post Office Box 20338
                        Greenville, N.C. 27858
                        Tel: (252) 830-5366
                        Fax: (252) 830-9366
                        Email: maleon@leonlaw.org

17

Case 5:09-cv-00022-H    Document 5    Filed 02/03/09    Page 17 of 17