IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:09-CV-22-H

PAULA PARRISH,

    Plaintiff,

v.

JOHNSTON COMMUNITY COLLEGE, a
constituent institution of
the North Carolina Community
College System, DR. DONALD L.
REICHARD, in his individual
capacity, DONALD H. JOHNSON,
in his individual capacity,
and GEORGE HOWARD JONES, in
his individual capacity,

    Defendant.

**ORDER**

This matter is before the court on defendants Johnston Community College, Dr. Donald L. Reichard, and Donald H. Johnson's motion for summary judgment. Plaintiff has responded, and defendants have replied. This matter is ripe for adjudication.

### BACKGROUND

Plaintiff Paula Parrish has worked for defendant Johnston Community College (the "College" or "JCC") since January 2000, first as the Coordinator of Computer Applications in the

Continuing Education Division, and later as the Director of Computer Applications and Distance Learning. Plaintiff brought this action against Johnston Community College for sexual harassment and gender-based discrimination; against defendants Donald L. Reichard and Donald H. Johnson for deprivation of plaintiff's Fourteenth Amendment rights; and against defendant George Howard Jones ("Jones")[1] for assault, battery, and intentional infliction of emotional distress.

Plaintiff's allegations of sexual harassment stem from interactions with two different individuals employed at JCC. Jones worked at the College as a maintenance supervisor. Beginning in or around 2005, Jones began lavishing unwanted attention on plaintiff, calling her "pretty lady," waiting by her car after work, and offering her small bottles of alcohol. Jones visited plaintiff's office on numerous occasions, bringing her gum or candy or leaving gum or candy for her to find when she arrived at her office in the morning. Plaintiff asked Jones to stop bringing her gum and candy, but Jones failed to cease his objected-to behavior.

On more than one occasion, plaintiff arrived at work to find her office door unlocked and slightly ajar. As a result, on December 4, 2007, Plaintiff installed a webcam to monitor her

---

[1] Defendant Jones has not moved for summary judgment; therefore, the court will not discuss the claims against Jones.

2

office while she was away.  When she checked the webcam footage on December 10, 2007, she found photographs of Jones "exposing himself, masturbating and performing other lewd acts in her desk chair," and "placing an unwrapped stick of gum against his penis and then re-wrapping the gum and placing it on Plaintiff's desk." (Compl. ¶ 22.) The following day, at the request of the college, Jones resigned (or retired). After the webcam incident, plaintiff experienced anxiety, panic, insomnia, and other symptoms for which she sought professional medical treatment.

Jones continued to visit campus, even after his resignation, causing plaintiff to become fearful and to ask her supervisors for assistance. Plaintiff alleges she was told that JCC could not keep Jones from coming to JCC. Plaintiff asserts this lack of support and Jones's subsequent visits to campus caused her additional emotional trauma.

Plaintiff also alleges she was harassed by Donald H. Johnson prior to his resignation on March 10, 2008. Johnson was employed by the college in March 1999 as the Director of Small Business Center and Occupational Extension Services. In 2004, he became the Department Chair of Health and Public Safety. During his employment with JCC, he was never plaintiff's supervisor.

3

Plaintiff claims that beginning in 2000, Johnson "created a work environment and atmosphere saturated with sexual suggestion, innuendo and proposition." (Amend. Compl. ¶ 13; Parish Dep. at 109.) Specifically, she alleges that he asked her what sexual positions she liked, often told jokes of a sexual nature in the office, sent email messages with sexual content to all women in the Continuing Education Division, discussed what he did with his wife during sexual encounters, and made comments to Parrish that he "liked the view" when walking behind her. (Amend. Compl. ¶ 13.)

Plaintiff's complaints against Johnson span several years and are varied in nature, but are summarized briefly as follows. In 2001, plaintiff complained that Johnson made comments of a sexual nature and jokes with strong sexual overtones, as well as gave her looks that made her feel uncomfortable. An investigation by Talbert Myers ("Myers"), Vice President of Continuing Education, concluded that Johnson did make offensive comments but that Parrish also probably participated, at least minimally and that she may have engaged in some activity that indicated that the jokes and comments did not offend her. Based upon plaintiff's request for Mr. Johnson not to be disciplined, no disciplinary action was taken. Johnson was required to attend a sexual harassment workshop. In September 2004,

4

plaintiff complained again, this time regarding sexually explicit comments and jokes, some of which referred to specific body parts. At this time, plaintiff and co-worker April Lee met with Myers and requested that Johnson be given one month to cease his inappropriate actions. Myers reluctantly agreed because Parrish and Lee did not want to make an official complaint with HR. Myers informed Parrish and Lee that they need to tell Johnson that his comments and actions offended them and that he must stop immediately. Again in 2005, plaintiff complained of additional comments of a sexual nature. This time JCC conducted a formal investigation and determined that Johnson had violated the college's Sexual Harassment Policy. The college placed Johnson on probation for one year, retroactive to July 1, 2005.

It appears that the offensive conduct ceased at that point. In fact, in the summer of 2006, Johnson's office was moved to Clayton, North Carolina, almost 20 miles from plaintiff's office at the main campus in Smithfield. It was not until December 2007 that Parrish was offended again by one of Johnson's comments. Johnson told Parrish and some other employees that he found out that his new neighbors were strippers and that his wife was more excited about that than he was. Plaintiff walked out of the room at that point in the conversation, so she does

5

not know if Johnson continued the story. Following this "stripper comment" by Johnson, plaintiff lodged another sexual harassment complaint against him with the college. The college investigated and concluded that Johnson's actions violated JCC's Sexual Harassment Policy. Johnson was compelled to resign from JCC effective March 10, 2008.

## COURT'S DISCUSSION

### I. Summary Judgment Standard of Review

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

Summary judgment is not a vehicle for the court to resolve disputed factual issues. Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. The evidence must also be such that a reasonable jury could return a verdict for the non-moving party. Id. at 248. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. Faircloth, 837 F. Supp. at 125.

The elements of a hostile work environment claim are that (1) the plaintiff was subjected to unwelcome conduct; (2) the alleged harasser engaged in this conduct "because of" her gender; (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create a hostile work environment; and (4) there is some basis to impute liability to

7

the employer. Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 266 (4th Cir. 2001).[2]

## II. Motion To Exceed Page Limitation

Plaintiff moves the court to allow her to exceed the page limitation in her response to defendants' motion for summary judgment. Having reviewed the matter, the court hereby GRANTS plaintiff's motion [DE #58]. Her entire response shall be considered in ruling on defendants' summary judgment motion.

## III. Statute of Limitations

Defendants argue that the substantial majority of plaintiff's allegations concerning Johnson are time-barred and should not be considered. Title VII requires an employee to file a charge of discrimination with the EEOC within 180 days after "the alleged unlawful employment practice occurred." In hostile work environment cases, a series of separate acts may constitute one "unlawful employment practice." As long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

---

[2] Because plaintiff's § 1983 claims are based upon the same facts and reasoning as the Title VII claims, the court does not distinguish the claims in its analysis.

8

101, 103 (2002). However, a plaintiff may not recover for acts that occurred before the filing period if such acts had no relation to or were no longer part of the same hostile work environment claim, for reasons such as "certain intervening action by the employer." Id. at 118.

Plaintiff filed her charge of discrimination with the EEOC on March 7, 2008. The only allegation occurring within 180 days prior to March 7, 2008 was the "stripper comment," i.e., plaintiff's hearing part of a story Johnson told about two strippers being his new neighbors. The remaining allegations arise from events occurring in 2000-01 and 2004-05 and concern matters unrelated to the December 2007 "stripper comment."

Defendants argue that plaintiff's allegations cannot all be considered part of the same hostile work environment claim for two distinct reasons. First, defendants argue that Johnson's "stripper comment" does not constitute sexual harassment and therefore does not "contribute to" plaintiff's hostile work environment claim. See Paquin v. MBNA Marketing Systems, Inc., 233 F. Supp. 2d 58, 63 (D. Maine 2002) (holding plaintiff's entire sexual harassment claim was time-barred as any timely "anchoring acts" did not "constitute instances of harassing conduct sufficient to support a sexual harassment claim".) Second, defendants argue that the December 2007 "stripper"

9

comment was not part of the same hostile work environment claim because of the intervening action by the employer (i.e., disciplining of Johnson) and the amount of time that had elapsed since the prior incidents. See Nat'l R.R. Passenger Corp. v. Morgan, 536 US 101, 118 (2002); see also, e.g., Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 329-30 (5th Cir. 2009) (employer's reassignment of supervisor constituted intervening action that cut off employer's liability for earlier harassment, even though harassment resumed sixteen months later when harasser was again assigned to supervise plaintiff.)

The court, having carefully considered both parties' arguments, finds that the moving defendants are entitled to summary judgment in regards to the allegations involving Johnson. The only timely allegation (the December 2007 "stripper comment") is not severe and pervasive enough standing alone to make out a hostile work environment claim. Additionally, the intervening action of discipline by JCC and the time gap between the 2004-05 allegations and the December 2007 "stripper comment" make the connection between the allegations too tenuous to constitute a single, unlawful employment practice.

Furthermore, the court finds that there is no evidence that JCC or Reichard were negligent in handling Parrish's complaints

10

of sexual harassment, and therefore cannot be held liable for Johnson's or Jones' conduct under these circumstances. To prove an employer's negligence in a hostile work environment claim, the plaintiff must show the employer "knew or should have known about the conduct and failed to stop it." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 759 (1998); see also Howard v. Winter, 446 F.3d 559, 567 (4th Cir. 2006)) (quoting Spicer v. Virginia Dep't of Corrs., 66 F.3d 705, 711 (4th Cir. 1995) (en banc) ("When presented with the existence of illegal conduct, employers can be required to respond promptly and effectively, but when an employer's remedial response results in the cessation of the complained of conduct, liability must cease as well.")).

The evidence in this case shows that once made aware of Johnson's inappropriate behavior, JCC and Reichard promptly took action to stop the harassment. Each time plaintiff formally complained about Johnson, an investigation was conducted, and in 2005, Johnson was disciplined. Upon learning of the December 2007 "stripper comment" (which this court has found not sufficiently severe or pervasive to constitute a hostile work environment standing alone), JCC investigated the matter and, after taking into account Johnson's history, asked Johnson to tender his resignation. Based on these actions, JCC may not be

11

held liable for the alleged harassment by Johnson. See <u>Mikels v. City of Durham</u>, 183 F.3d 323, 332 (4th Cir. 1999) (employers only liable for their own negligence if they fail to take "prompt and adequate action.").

The same is true with respect to Jones. When plaintiff provided JCC officials with the webcam photos of Jones in plaintiff's office, JCC took prompt action and ended Jones' employment with JCC the very next day, December 11, 2007. Following the termination of Jones' employment, JCC allowed Parrish to move her office to a "safe" area and installed security cameras which Parrish could view from her desktop. JCC offered to pay for counseling costs and even offered the assistance of the college's attorney to sue Jones. Although Jones was not banned from JCC's campus, JCC officials sent him two letters instructing him to come onto campus only if he had business there and to contact the college prior to any visit. Additionally, plaintiff admits that although Jones came onto the campus a few times, she never saw him there.

Here, there are no genuine issues of material fact as to the remedial action taken by JCC in regards to complaints of harassment made by plaintiff. The court finds that plaintiff has not shown a genuine issue of material fact or any evidence which would impute liability to the employer in this matter.

12

Therefore, the moving defendants' motion for summary judgment is GRANTED.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to exceed the page limitation is GRANTED [DE #58], and defendants' motion for summary judgment is GRANTED [DE #37]. Plaintiff's claims against defendants Johnston Community College, Dr. Donald Reichard, and Donald H. Johnson are dismissed. Remaining before the court are plaintiff's claims against defendant George Harold Jones in his individual capacity.

This 25TH day of January 2011.

Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#26